UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY McKAY BROWN,

    Plaintiff,

vs.                                      Case No. 18-11623

EQ INDUSTRIAL SERVICES, INC.,          HON. AVERN COHN
d/b/a US ECOLOGY,

    Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 4)

### I. Introduction

This is an employment case. It began when Local 324 (the Union) and Gregory McKay Brown (Brown) sued defendant EQ Industrial Services, Inc. d/b/a US Ecology (EQIS) claiming race discrimination under 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.1101. Brown contends that EQIS discriminated against him based on his race when it rejected his applications for promotion in January 2015 and November 2015. As will be explained, following a hearing, stipulations, and supplemental briefing, the matter is before the Court on EQIS's motion to dismiss the Third Amended Complaint. For the reasons that follow, the motion will be granted because Brown's claims are time barred.

II. Background

A. Factual

1.

Brown is a current employee of EQIS. He began working for one of its many predecessors of EQIS on or about November 27, 1989. For much of his employment, Brown has worked in the part of the company known as Household Hazardous Waste Department/Program.

On November 26, 2003, Brown executed an Application for Employment with a predecessor of EQIS. See EQIS Ex. 2, Application. Directly above Brown's signature, the application contains a 180-day contractual limitations period, which states, in relevant part:

> I acknowledge that the term "the Company" as used below means EQ – The Environment Quality Company and any related companies to which I may transfer or be assigned including, but not limited to, Michigan Recovery Systems, Inc., Wayne Disposal, Inc. and E.Q. Industrial Services, Inc.
> * * *
> I agree not to commence any action or suit relating to my employment with the Company more than 180 days after the date of termination of such employment or after the date of the facts giving rise to the claim, whichever is earlier, and to waive any statute of limitations to the contrary.

Also on November 26, 2003, Brown also signed a Dispute Resolution Agreement. See EQIS Ex. 4, Dispute Resolution Agreement. This agreement provides in relevant part:

> EQ encourages the prompt and inexpensive resolution of disputes with applicants and current and former employees. Therefore, EQ asks its applicants and

employees to agree to this Dispute Resolution Agreement for all claims and disputes (including claims or disputes alleging illegal discrimination) they may have concerning, arising from or relating to their application for and/or employment with EQ, except as specifically noted below. Your signature will acknowledge your agreement.
* * *
    3. If the claim or dispute is not resolved to my satisfaction by EQ's Director of Human Resources, I will submit it to final and binding arbitration…I acknowledge and agree that I and/or EQ may move for the entry of judgment on any arbitration award in the appropriate circuit court or other court of competent jurisdiction.

    4. EQ, as used in this Agreement, means The Environmental Quality Company, EQ-Industrial Services, Inc., EQ-Resource Recovery, Inc., Wayne Disposal, Inc., EQ-Northeast, Inc., and any related company by which I may be employed.

The following language immediately precedes Plaintiff Brown's signature:

**I understand and agree that I signed this Dispute Resolution Agreement I may not file a lawsuit in any court against EQ concerning, arising from or relating to my application to or employment with EQ and will, instead, be limited to the procedure set forth above, including final and binding arbitration. I believe this is in my best interest and in the best interest of EQ because it is likely to result in the relatively speedy and inexpensive resolution of any claim or dispute that may exist or arise**.

(Emphasis in original.)

2.

In January 2015, Brown applied for the position of Manager of the Household Hazardous Waste Management Department. Three months later, in April, he learned he was not selected for that promotion. The position became available again in

November 2015, and that Brown re-applied for the position at that time. About five months later, in April 2016, EQIS selected an alternative candidate, an "Asian-Indian female" for the position.

B. Procedural

On May 23, 2018, the Union and Brown filed a Complaint. (Doc. 1). In lieu of filing an answer, EQIS moved to dismiss the Complaint on the grounds that the Union was not a real party in interest, or otherwise lacked standing, and for the reason that all of the claims against it are barred by the 180 day contractual limitations period contained within the Application for Employment. In the alternative, EQIS argued that the claims against EQIS should be dismissed in light of the binding arbitration provision contained within the Dispute Resolution Agreement. (Doc. 4).

The Union and Brown then filed a Motion for Leave to File Second Amended Complaint, pursuant to which they sought to amend the Complaint to add two exhibits. The exhibits which McKay Brown and former Plaintiff Union attached to the proposed Second Amended Complaint consisted of a 2015 employee handbook and a Letter of Agreement dated December 19, 2018, which they claimed may be of assistance to the Court in resolving EQIS' Pending Motion to Dismiss Amended Complaint, or in the Alternative Compel Arbitration. (Doc. 14). EQIS opposed the Motion on the grounds that the proposed Second Amended Complaint remained subject to dismissal because it brought only the same time-barred claims, which even if not time-barred, were required to be arbitrated. (Doc.16)

In March 2019, the Court held a hearing on EQIS' Motion to Dismiss and Plaintiffs' Motion for Leave to File Second Amended Complaint. The Court granted

Plaintiffs' motion (Doc. 20). The Court also granted EQIS's motion in part, dismissing the Union. (Doc. but taking the remaining issues presented in the motion under advisement. The Court later entered an order dismissing the Union. (Doc. 21).

Brown then filed a Second Amended Complaint. (Doc. 22). The parties later stipulated to permit Brown to amend his Second Amended Complaint to add a new exhibit and to replace Exhibit A of the Second Amended Complaint (a Letter of Agreement dated December 19, 2018) with a copy of a Represented Associates Handbook Acknowledgment of Receipt dated March 5, 2014. See Doc. 23. The Court then entered an order allowing Brown to file a Third Amended Complaint which also permitted EQIS to file a supplemental brief in further support of its motion to dismiss. (Doc. 25). EQIS has filed the supplemental brief. (Doc. 26).

III. Motion to Dismiss

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) tests whether the Court has subject-matter jurisdiction of a claim. A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is evaluated under the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted. Scheid v. Fanny Farmer Candy Shops, 859 F.2d 434, 436 n.1 (6th Cir. 1988).

In assessing a Rule 12(b)(6) motion, the district court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001). The factual allegations of the complaint must be enough to raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Further, a court is "not bound to accept as true a legal conclusion couched as a factual

5

allegation." Id.

"In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), th[e] Court may only consider 'the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice.'" Murray v. Geithner, 624 F. Supp. 2d 667, 671 (E.D. Mich. 2009) (citing 2 James Wm. Moore et al., Moore's Federal Practice 12.342 (3d ed. 2000). Here, the Court has considered the exhibits attached to the pleadings and the parties' papers.

## IV. Analysis

### A. Brown's Employment Application

EQIS says that Brown's claims must be dismissed because they were filed outside of the 180 days period of limitations in his employment application. Because Brown's pleadings do not identify a specific date on which Plaintiff Brown alleged he learned he had not been selected for promotion, EQIS calculated the 180 day limitation period as running from the last day of April 2015 - when he was not promoted the first time - and the last day of April 2016 - when he learned that another candidate was selected for the second position he applied for. Brown did not file suit until May 23, 2018, which is well beyond 180 days.

Limitations periods are procedural tools "for the protection of defendants." Badgett v. FedEx, 378 F. Supp. 2d 613, 625 (M.D.N.C. 2005)(citing Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 608 (1947)). "Among the basic policies served by statutes of limitations is preventing plaintiffs from sleeping on their rights and prohibiting the prosecution of stale claims." Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003); see Del. State Coll. v. Ricks, 449 U.S. 250, 256-57 (1980)("The limitations

periods…protect employers from the burden of defending claims arising from employment decisions that are long past."); Mo. Kan. & Tex. R.R. Co. v. Harriman Bros., 227 U.S. 657, 672 (1913)("The policy of statutes of limitation is to encourage promptness in the bringing of actions.").

Additionally, the Michigan Supreme Court has held that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." Rory v. Continental Ins. Co., 703 N.W.2d 23 (Mich. 2005). Courts have enforced contractual limitation provisions similar to those signed by Brown in this case. See, e.g., Timko v. Oakwood Custom Coating, Inc., 244 Mich. App. 234, 244 (2001)(enforcing a 180-day statute of limitations period that was located in an employment application where the employer provided the employee with "consideration to support enforcement of the terms of the application, specifically employment and wages."); Clark v. DaimlerChrysler Corp.,706 N.W.2d 471 (Mich. Ct. App. 2005) (finding 180-day contractual; limitation period in an employment application enforceable)

Significantly, the Sixth Circuit has held that parties may contract for shorter limitations periods to bar various state and federal claims, including claims brought under Section 1981 and Michigan's ELCRA. See, e.g.,Davis v. Landscape Forms, Inc., 640 Fed. Appx. 445, 450 (6th Cir. 2016)(holding that shortened statutes of limitations apply to claims brought pursuant to Section 1981 and rejecting plaintiff's argument that such a shortened statute of limitations violated the four year provision in Section 1981); Boaz v. FedEx Customer Info. Servs., 725 F.3d 603, 606 (6th Cir. 2013)(noting that the parties can agree to contractually shorten the statute of limitations for Title VII claims);

7

Oswald v. BAE Industries, Inc., 483 Fed. Appx. 30, 34-35 (6th Cir. 2012)(enforcing a contractually shortened statute of limitations); Steward v. New Chrysler, 415 F. App'x 632, 638 (6th Cir. 2011)(limiting claims brought under the ADA and Michigan's civil rights statutes to those falling within the six-month contractual limitations period); Rice v. Jefferson Pilot Fin. Ins. Co., 578 F.3d 450, 454 (6th Cir. 2009)(enforcing shortened statute of limitations as to federal claims); Bates v. 84 Lumber Co., L.P., 205 Fed. Appx. 317, 322-23 (6th Cir. 2006)("parties may contract for shorter limitations periods" than that provided by state and federal law); Thurman v. DaimlerChrysler, Inc., 397 F.3d 352, 357-59 (6th Cir. 2004) (enforcing six-month contractual limitations period for federal and state discrimination claims); Myers v. Western-Southern Life Ins., 849 F.2d 259, 262 (6th Cir. 1988) (barring disability discrimination claims based on the contractual limitations provision). As to Section 1981 particularly, courts have enforced a shortened contractual limitations period. See Njang v. Whitestone Grp., Inc., 187 F. Supp. 3d 172, 178 (D.C. Cir. 2016) (six month statute of limitation applied to § 1981 claims).

Brown, however, relies on cases involving the Fair Labor Standards Act and Family Medical Leave Act which do not permit shortened limitations periods. This reliance is misplaced. The Sixth Circuit has distinguished FLSA and FMLA claims from other employment related claims and, as noted in decisions above, have permitted shortened periods in other statutes. See Boaz v. FedEx Customer Serv., Info, Svcs, Inc., 725 F.3d 603, 6060 (noting that shortened periods are not enforceable as to the FLSA and Equal Pay Act but are as to Title VII).

Here, as noted above, Brown signed an Application for Employment which contains a truncated 180 day limitations period that is clearly and unambiguously set

8

forth in the Application. "Because there are no statutes explicitly prohibiting the contractual modification of limitations periods in the employment context, the contract provision is not contrary to law." Clark, 706 N.W.2d at 471. Moreover, "Michigan has no general policy or statutory enactment prohibiting the contractual modification of the periods of limitations provided by statute." Id. Accordingly, Brown's agreement to a shortened period of limitations is enforceable and he was required to file suit on or before October 27, 2015 and October 27, 2016, 180 days from the date of the employment actions complained of, which occurred no later than April 30, 2015 (when Brown learned he was not promoted for the first position he applied for) and April 30, 2016 (when Brown learned the second position he applied for was filled with another candidate).

### B. The Handbook and Handbook Receipt

Brown argues that a 2015 employee handbook and a 2014 Handbook Receipt override and supersede the valid and enforceable contractual agreements between him and EQIS pursuant to which he agreed to a shortened statute of limitations and to binding arbitration. This argument does not carry the day, as explained below.

The handbook clearly states that "it is not intended to create, nor should it be considered as creating an express or implied, contract, a promise of specific treatment in any specific circumstance, a guarantee of employment for any term or a warranty of any benefits." The Handbook Receipt similarly states that "EQ may change, rescind, or add to any policies, benefits, practices or procedures…" This language demonstrates that EQIS did not intend to be bound to any provision contained in the Handbook or Handbook Receipt. Because EQIS could unilaterally amend any provision in the

Handbook and Handbook Receipt, they cannot be mutual or binding, i.e. they are not contracts. See Mohamed v. Brenner Oil Co., No. 341899, 2019 WL 845852, at *3 (Mich. Ct. App. Feb. 21, 2019).

Brown, however, says that "the handbook expressly provides that it 'defines the company's responsibilities and obligations to associates and vice versa' and that it "supersedes all prior versions", and that the Handbook Receipt expressly provides that the "Handbook supersedes any and all prior related policies of EQ or any of its past or present related entities." Neither the Handbook or Handbook Receipt contain any language expressly stating that those documents are intended to supersede any prior contractual agreements entered into between the parties.

In sum, there is no basis upon which to hold that a handbook or handbook receipt, which make no reference to the contractual agreements at issue in this case, somehow supersede them.

### C. The Presence of the Union

Brown suggests that the employment application and arbitration agreement were executed at a time in which Brown was part of a bargaining unit represented by the Union. Brown has contended that in 2003, despite the presence of the Union, a predecessor to EQIS began approaching bargaining unit employees such as Brown and had them execute these separate employment agreements. Indeed, the Union was a party to the case initially precisely because it believed the shortened statute of limitations and arbitration agreements were illegal.

Section 7 of the NLRA provides in pertinent part as follows: "employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain

collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." The Act provides that "it shall be an unfair labor practice for an employer -- (1) to interfere with, refrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C.§ 158(a)(1). The Act further precludes an employer from discriminating "in regard to hire or tenure of employment or any term or condition of employment" to discourage union membership. Id. at § 158(a)(3).

However, whether or not EQIS or a predecessor violated the NLRA is not at issue for the Court. The Supreme Court has held that when an activity is arguably subject to these provisions, state and federal courts must defer to the exclusive jurisdiction of the National Labor Relations Board (NLRB). San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245 (1959).

Indeed, the Union is well aware of the role of the NLRB. During the pendency of this case, the Union filed an unfair labor practice ("ULP") charge with the NLRB. On February 5, 2019 the Regional Director of the NLRB issued a "Decision to Partially Dismiss" wherein it dismissed "the portions of the charge alleging that…the Employer has maintained…and unilaterally implemented and attempted to enforce a mandatory arbitration policy and a condition of employment requiring employees to file all claims relating to employment within 180 days of the event, and that these actions were taken without notice to or bargaining with the Union", and "that such policy was the result of the Employer directly dealing with the employees at a time when they were represented for purposes of collective bargaining by the Union…" See EQIS's Ex. 3. The Union

11

appealed the decision to partially dismiss. On March 19, 2019, the NLRB affirmed the Regional Director's decision. See EQIS's Ex. 4. Significantly, the NLRB decision provides:

> The Charging Party Union contends on appeal that it was unaware of the alleged unlawful, unilateral changes made by the Employer…requiring employees to execute the Employer's job application agreeing to a 180-days statute of limitations policy for filing work related claims from the date of the occurrence or termination of employment, and/or…requiring employees to execute the Employer's dispute resolution agreement requiring arbitration of all job-related claims…The Union's contention of the alleged "secret nature of the Employer's policies herein" as a means of obstructing its actual knowledge or constructive knowledge of the existence of either [the 180 day statute of limitations or the dispute resolution] policy prior to August 2018 is contrary to the evidence. For one, the investigation disclosed that in 2008 affiant witness presented by the Union on appeal signed his own job application with the Employer inclusive of the identical 180-day limitations period language, while additionally executing a signed dispute resolution agreement limiting the forum for addressing work-related matters to arbitration. Additionally, these documents were regularly maintained in all employee personnel files, including the ones reviewed by the Union in 2016. Under the circumstances, the evidence supports a finding that the Union had knowledge or constructive knowledge of the implementation and use of the policies herein more than six months before the charge was filed and served, and therefore, these allegations are barred from further processing under Section 10(b) of the Act.

Thus, to the extent that Brown is attempting to have this Court resolve the issue of whether EQIS's actions in seeking to enforce the shortened statement of limitations to which Brown agreed somehow constitute impermissible direct dealing or a violation of the NLRA, that issue is not properly before this Court. Rather, the issue was properly before the NLRB, who found against the Union.

Brown also contends that the statute of limitations is not enforceable because of the presence of the Union. This argument does not carry the day. The Sixth Circuit has held that a shortened statute of limitations agreements in a union environment are

12

enforceable. In Thurman v. DaimlerChrysler, Inc., 397 F.3d 352, 356-358 (6th Cir. 2004) the Sixth Circuit rejected the arguments that the collective bargaining agreement superseded the employment application and that the shortened statute of limitations was a mandatory subject of bargaining. The court stated in relevant part:

> We conclude that the collective bargaining agreement does not supersede the employment application's six-month statute of limitations. Individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee…there is no provision in the collective bargaining agreement limiting the right of the employer to enter into abbreviated limitations periods with individual employees. We also note that the Thurmans have not pointed to any authority holding that statutes of limitation are a mandatory subject of bargaining…

Thurman at 355-356. See also See Yeargin v. Chrysler Group, LLC, 2013 WL 593474 (E.D. Mich. Feb. 15, 2013)(citing Thurman and holding that shortened statute of limitations applied when signed by employee who was included in collective bargaining unit).

Here, the employment application is a contract which binds Brown. Because it is clear that he did not file suit within 180 days of the alleged wrongs, Brown's claims are untimely and must be dismissed.

### D. Arbitration.

EQIS alternatively argues that the case should be dismissed or stayed pending arbitration, relying on the Dispute Resolution Agreement Brown signed on November 26, 2003 in which he agreed that any claims concerning, arising from or related to his employment must be submitted to binding arbitration. While the Court agrees that arbitration is favored as a general principle, the fact that Brown chose to file suit rather than pursue arbitration forecloses the ability to send the case to arbitration. This is

13

because Brown filed suit too late. As such, the Court will not address EQIS's alternative argument. The Court expresses no opinion on whether Brown may now seek arbitration.

V. Conclusion

For the reasons stated above, EQIS's motion to dismiss is GRANTED. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn  
AVERN COHN  
UNITED STATES DISTRICT JUDGE

Dated: 5/6/2019
      Detroit, Michigan